IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN CORDES and LINDSEY CORDES, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 3:20-CV-10-MAB |
| vs. | ) ) |
| CENTERS FOR REPRODUCTIVE MEDICINE AND WELLENSS, LLC, D/B/A VIOS FERTILITY, VIOS FERTILITY INSTITUTE CHICAGO, LLC, and ADVAGENIX, LLC, | ) ) ) ) ) |
| Defendants. | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on two motions: (1) Defendants' joint motion for application of Missouri law (Doc. 126); and (2) Defendants' joint motion for summary judgment (Doc. 127). For the reasons set for below, the Court DENIES the motion for application of Missouri law (Doc. 126) and DENIES the motion for summary judgment (Doc. 127).

### BACKGROUND

In 2016, Plaintiff Lindsey Cordes suffered a miscarriage (Doc. 44 at p. 7). A chromosome analysis performed on tissue from the fetus revealed an abnormal chromosome pattern (*Id.*). After further testing, Plaintiff John Cordes was diagnosed with a genetic defect, known as a four-way translocation, which created a high likelihood that

his sperm cells would contain an unbalanced amount of chromosome material (*Id.*, *see also* Doc. 126-7). It is believed that John Cordes' four-way translocation was the cause of the miscarriage (Doc. 44 at p. 7).

In February 2017, Plaintiffs John and Lindsey Cordes (collectively "Plaintiffs") pursued fertility treatment with Dr. Amber Cooper[1] at the Center for Reproductive Medicine and Wellness LLC, d/b/a, Vios Fertility, and Vios Fertility Institute Chicago, LLC (collectively, the "Vios Defendants") in St. Clair County, Illinois (*Id.* at pp. 1-2). At an in-person consultation in Illinois,[2] Dr. Cooper and Plaintiffs discussed the miscarriage, John Cordes' genetic defect, and the possibility of using an in vitro fertilization process and preimplantation genetic screening to determine if an embryo had extra or missing chromosome material (*Id.* at p. 8, Doc. 126-3 at transcript pp. 28-30). Shortly after the consultation with Dr. Cooper, Plaintiffs began the in vitro fertilization process (Doc. 44 at p. 8). After thirteen of Plaintiffs' embryos were fertilized, six embryos were biopsied and sent to Defendant Advagenix for genetic screening (*Id.*). After receiving and testing the cells at its Maryland laboratory, Advagenix determined two embryos did not appear to have any genetic abnormalities (Doc. 126 at p. 13, Doc. 126-5). As a result, on May 15, 2017, Dr. Cooper implanted Lindsey Cordes with both "normal" embryos at Vios' Illinois

---

[1] Dr. Cooper was previously named as a defendant in this action (*see* Doc. 1). Plaintiffs voluntarily dismissed Dr. Cooper without prejudice in April 2020 (Doc. 41).
[2] Due to a non-compete agreement in effect at the time in question, Dr. Cooper was prohibited from seeing patients in St. Louis (Doc. 126-11). "For that reason alone, [Dr. Cooper] saw Plaintiffs at Vios' Swansea, Illinois location instead of the VIOS location in St. Louis." (*Id.*).

location (Docs. 126-3 at transcript p. 40, Doc. 44 at p. 9). An ultrasound later revealed one of the embryos survived (Doc. 44 at p. 9).

Lindsey Cordes gave birth to Hannah Cordes on January 19, 2018, in St. Louis, Missouri (*Id.*). Hannah was born with numerous physical anomalies and subsequent testing revealed a genomic imbalance that was presumably a result of John Cordes' four-way translocation (Doc. 44 at pp. 9-10).

Plaintiffs filed this action on January 3, 2020, alleging Defendants committed medical malpractice by breaching the duty to provide care and treatment to Plaintiffs in accordance with that of a reasonably competent medical provider through their negligent acts and omissions (Doc. 1). Specifically, as stated in their second amended complaint, Plaintiffs' claim they "underwent the preimplantation genetic counseling for the primary purpose of avoiding a child with an unbalanced translocation." (Doc. 44 at p. 10). Plaintiffs assert that Defendants failed to adequately apprise them of the inaccuracy of testing and the potential risk that the allegedly "normal" embryos would possess the genetic deficiencies Plaintiffs sought to avoid (*Id.* at pp. 10-11). Plaintiffs contend they relied upon Defendants' representations in deciding to move forward with the implantation and they would "have avoided conception of the pregnancy but for the actions and/or inactions of Defendants[.]" (*Id.* at p. 11).

Defendants filed a joint motion for the application of Missouri law (Doc. 126) and also filed a corresponding motion for summary judgment, which argues they are entitled

to summary judgment because Missouri does not recognize the instant cause of action (Doc. 127).

### CHOICE OF LAW LEGAL STANDARD

The issue before the Court is whether to apply the law of Illinois or Missouri to Plaintiffs' claims (Docs. 126, 140, 143). "A federal court exercising its diversity jurisdiction over state-law claims applies the choice-of-law rules of the state in which it sits." *Gunn v. Contl. Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). Illinois applies forum law unless an actual conflict with another state's law is shown or the parties agree forum law does not apply. *Gunn*, 968 F.3d at 808 (citing *Bridgeview Health Care Ctr. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)). However, "[b]efore the court is required to make a choice-of-law determination, the moving party must establish that there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." *Mesa Laboratories, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867-68 (7th Cir. 2021) (internal quotation marks and citations omitted). In other words, the party seeking a choice-of-law determination bears the burden of demonstrating an outcome determinative conflict exists between Illinois law and the law of another state. *Id.*; *see also Sosa v. Onfido, Inc.*, 8 F.4th 631, 637-38 (7th Cir. 2021) (citing *Bridgeview*, 10 N.E.3d at 905).

If the movant is able to meet that burden by establishing a conflict, the Court then analyzes which states' law to apply using Illinois's choice-of-law rules. *Gunn*, 968 F.3d at 808. "In general, Illinois follows the Restatement (Second) of Conflict of Laws (Am. Law Inst. 1971)." *Id.*; *see also Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007).

Pursuant to the Second Restatement, Illinois courts apply the presumption that the local law of the state where the injury occurred should be applied, and then consider whether another state has a more significant relationship with the occurrence and the parties. *See* Restatement (Second) of Conflict of Laws § 146 (1971); *Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 903 (Ill. 2007) ("Thus, a presumption exists, which may be overcome only by showing a more or greater significant relationship to another state.").

When determining if another state has a more significant relationship, Illinois courts consider: (1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the parties' domicile, nationality, place of incorporation, and place of business; and (4) the place where the parties' relationship is centered. *See* Restatement (Second) of Conflict of Laws § 145 (1971); *Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970); *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *Vaughn v. Ethicon, Inc.*, 2020 WL 5816740, at *3 (S.D. Ill. Sept. 30, 2020). Finally, after determining the most significant relationship, courts then consider the policy factors outlined in section 6 of the Second Restatement, which includes: the relevant policies of the forum, the relevant policies of other interested states, and basic policies underlying the particular field of law. *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. App. 1997).

## D<span style="font-variant:small-caps">iscussion</span>

The Court first considers the threshold question of whether Defendants have established the existence of an outcome determinative conflict between Illinois and Missouri law. *Mesa Laboratories, Inc.*, 994 F.3d at 867-68. The parties agree that Illinois law

permits Plaintiffs to bring this cause of action (Docs. 126 at p. 9, 140 at p. 7). Specifically, the Supreme Court of Illinois has "recognized that the parents of a child born with a genetic or congenital disorder have a cause of action in tort if, but for the defendant's negligence in testing or counseling as to the risk of giving birth to a child with such a condition, they would have avoided conception or terminated the pregnancy." *Clark v. Children's Meml. Hosp.*, 955 N.E.2d 1065, 1072 (Ill. 2011) (citing *Siemieniec v. Lutheran General Hospital,* 512 N.E.2d 691 (Ill. 1987)). Likewise, the parties agree that Missouri law does not permit actions for ***wrongful birth*** based upon the claim that a child would have been aborted (Docs. 126 at p. 9, 140 at p. 6) (emphasis added). Missouri's legislature has codified the prohibition at RSMo § 188.130.2, which provides, "No person shall maintain a cause of action or receive an award of damages based on the claim that but for the negligent conduct of another, a child would have been aborted." S*ee also Wilson v. Kuenzi*, 751 S.W.2d 741, 742 (Mo. 1988) ("Section 2 intends to preclude wrongful birth actions."). Therefore, when dealing with wrongful birth actions involving claims that a child would have been aborted but for a defendant's negligence, a conflict of law exists between Missouri and Illinois.

  Crucially, however, the Court is not convinced that Plaintiffs' instant action is a wrongful birth action as defined and prohibited under Missouri law. Again, Missouri's statute prohibits wrongful birth actions premised upon the claim that a child would have been aborted if the defendant was not negligent. RSMo § 188.130.2. For example, in the case relied upon by Defendants, the Supreme Court of Missouri was considering whether

a doctor who provided care to an already expectant mother could be held liable in tort if the doctor failed to diagnose a genetic defect. *Wilson*, 751 S.W.2d at 744. In determining the doctor could not be liable, the court emphasized that any negligence on the doctor's part had not caused the genetic defect because "it is incurable and was incurable from the moment of conception." *Id.* In other words, the mother was already pregnant with a child with the genetic defect before the doctor's alleged negligence. *Id.* Thus, the doctor's negligence did not cause the complained of condition, it merely failed to detect a condition that was already present. *Id.* The other Missouri cases cited by Defendants provide no further help because they also involve claims of medical negligence that occurred after the mother was already pregnant. *See, e.g.*, *Rolf v. Youngblood*, 753 S.W.2d 24 (Mo. App. 1988).

Additionally, the Court is not persuaded by Defendants' argument that *Wilson*'s holding should not be limited to cases where the mother is already pregnant because *Wilson* favorably quoted a dissent from a New York case that dealt with claims that the parents would have aborted the child ***and*** that they would not have chosen to conceive but for their physician's negligence. *See Becker v. Schwartz*, 386 N.E.2d 807 (N.Y. 1978); *see also Wilson*, 751 S.W.2d at 744-45. This attenuated argument ignores the fact that *Wilson* dealt exclusively with a wrongful birth claim involving post-conception negligence and in no way addressed the viability of pre-conception negligence claims.

The issue with Defendants' arguments is that they repeatedly characterize Plaintiffs' claim as a traditional wrongful birth claim. Yet a review of Plaintiffs' second

Page 7 of 12

amended complaint makes it clear that Plaintiffs are suing Defendants for their allegedly negligent counsel and genetic testing that occurred before implantation and induced Plaintiffs into implanting an embryo with genetic deficiencies (Doc. 44 at pp. 12-13, 14-15, 17-18). Such a claim is markedly different from the wrongful birth claims cited to by Defendants. In fact, Defendants have cited to no Missouri caselaw or statute that prohibits this specific type of action. Consequently, with no Missouri caselaw on point, there is no true conflict of law. *See Mesa Labratories, Inc.*, 994 F.3d at 868 ("Indeed, Mesa acknowledged in its opening brief that there is no Colorado case law on point. Therefore, we, like the district court sitting in Illinois, look to Illinois law."). As a result, the Court is not persuaded that Defendants have met their burden of establishing an outcome determinative conflict between Illinois and Missouri law. *See Id.* at 867-68; *Sosa*, 8 F.4th at 637-38. For this reason alone, Illinois law applies.

Nonetheless, even if Defendants had met their burden by establishing an outcome determinative conflict between Illinois and Missouri law, Illinois law would still apply because Illinois is both where the injury occurred and the state with the most significant relationship to the occurrence and the parties. *See Townsend*, 879 N.E.2d at 903 (discussing the presumption in favor of applying the law of the state where the injury occurred); *Barbara's Sales, Inc.*, 879 N.E.2d at 919 (explaining that Illinois courts follow the Second Restatement and look to see which state has the most significant relationship).

Critically, Plaintiffs claims rely on the alleged negligence of Defendants that induced them into implanting a defective embryo (Doc. 44). The injury of being induced

into implanting an embryo with genetic defects, therefore, occurred when and where the embryo was implanted. *See also Grossbaum v. Genesis Genetics Inst., LLC*, 2011 WL 2462279, at *8 (D.N.J. June 10, 2011) (holding the injury arose where the medical advice and implantation occurred, when dealing with a claim of alleged negligence involving the implantation of a defective embryo), *aff'd*, 489 Fed. Appx. 613 (3d Cir. 2012). Here, although Defendants' motion conspicuously fails to specify where the implantation occurred (Doc. 126), the record clearly establishes that the defective embryo was implanted in Illinois (Docs. 44 at p. 9; 126-3; 126-11; 126-12). Likewise, due to Dr. Cooper's non-compete agreement, it is indisputable that the allegedly negligent medical counsel that induced Plaintiffs into the implantation also occurred in Illinois.[3] As explained above, Plaintiffs' claim is not based upon any actions that occurred after the implantation. Therefore, Defendants' arguments that the injury occurred at birth ultimately miss the mark.[4]

---

[3] Defendants argue half of the visits relating to the genetic testing and implantation occurred in St. Louis and the other half that occurred in Illinois "were merely fortuitous due to Dr. Cooper's non-compete agreement." (Doc. 126 at p. 13). In response, Plaintiffs state "[a]ll discussions that Plaintiffs had with Dr. Cooper regarding PGD for a four-way translocation occurred at Defendant Vios' office in Illinois." (Doc. 140 at pp. 8-9). Plaintiffs further highlight "that Plaintiffs' claims of negligence stem only from the vicarious liability/negligent conduct that occurred at the office visits in Illinois." (*Id.* at p. 9). The Court agrees with Plaintiffs' assessment that the key appointments were those that occurred with Dr. Cooper in Illinois. Although Defendants emphasize unimportant events that occurred in St. Louis and downplay critical events that occurred in Illinois (such as not acknowledging that the implantation occurred in Illinois), it is clear to the Court that the key appointments occurred in Illinois.

[4] Defendants also cite to *Millar-Mintz v. Abbott Laboratories*, which states, "When a plaintiff's injury is latent, i.e., does not manifest itself until some time after defendant's alleged wrongful act occurred, the plaintiff's cause of action is said to accrue when plaintiff knows or reasonably should know he or she has been injured. This 'discovery rule' obtains with respect to latent physical injuries regardless of whether the plaintiff's injury is sustained as the result of a single traumatic event or several ostensibly innocuous circumstances." 645 N.E.2d 278, 282 (Ill. App. 1994). However, *Millar-Mintz* is factually and legally distinguishable. In that case, the court conducted a conflict of law analysis that looked at whether the plaintiff could bring a cause of action for prenatal injuries when she did not learn about those injuries until many years later. *Id.* at 280-

Illinois must be considered the state where the injury occurred under the significant relationship test for the very same reasons. Again, both the alleged failure to provide proper medical counsel and the implantation of a defective embryo occurred in Illinois. While the Court recognizes that Advagenix's allegedly negligent testing occurred in Maryland, it is significant that the test results were sent to Defendants and conveyed to Plaintiffs in Illinois. Moreover, the failure to adequately inform Plaintiffs of the risk of erroneous test results also occurred in Illinois. Therefore, even if a portion of Defendants' alleged negligence occurred in Maryland, the Court is satisfied that the bulk of Defendants' conduct occurred in Illinois. *See Grossbaum*, 2011 WL 2462279, at *8 n.8.

The Court next considers the domicile or place of business of each party. Notably, although the Plaintiffs live in Missouri and Vios has offices in both Missouri and Illinois, the Defendants' place of business relevant to Plaintiffs' claim is in Illinois. In other words, even though Vios maintains offices in both states, the office where Dr. Cooper and Plaintiffs conducted business was in Illinois. Therefore, this factor weighs slightly in favor of applying Illinois law.

Turning to the next factor, the Court analyzes where the relationship between the parties was centered. This factor also weighs in favor of applying Illinois law because Illinois is where Dr. Cooper provided counsel prior to the implantation and where the implantation occurred. As explained above, Defendants' contention that the relationship

---

81. In contrast, this case does not involve an issue as to when the cause of action accrued or if it was timely filed. Additionally, *Millar-Mintz* is of no significance to the Court's analysis here because that case did not address allegations of pre-conception negligence.

was split evenly between Missouri and Illinois is predicated on appointments that are not critical to Plaintiffs' claims.

Finally, the Court considers the above factors in light of the choice of law policy principles laid out in § 6(2) of the Second Restatement. The Supreme Court of Illinois has explained that analysis of these factors should focus upon, "(b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and (e) the basic policies underlying the particular field of law." *Townsend*, 879 N.E.2d at 907. The forum, Illinois, has a longstanding public policy of providing a remedy for alleged wrongs and holding a tortfeasor "liable for the harm that he causes, no more and no less." *Clark*, 955 N.E.2d at 1083. And, as the parties agree, Illinois' policy of holding tortfeasors liable applies to actions of this nature. *Id.* In contrast, because neither caselaw nor statute clearly prohibit or permit this type of action in Missouri, it cannot be said that Missouri has evinced a clear public policy in this situation. Furthermore, while Missouri may have an interest in applying its laws to injuries that occurred within Missouri, the alleged injury did not occur in Missouri. Ultimately, "[c]onsidering the policies and interests of [Missouri] and Illinois, and of the field of tort law, we are unable to conclude that [Missouri's] relationship to this case is so pivotal as to overcome the presumption that [Illinois], as the state where the injury occurred, is the state with the most significant relationship." *Townsend*, 879 N.E.2d at 907.

For all these reasons, the Court **DENIES** Defendants' joint motion for application of Missouri law (Doc. 126).

### JOINT MOTION FOR SUMMARY JUDGMENT

Defendants also filed a joint motion for summary judgment (Doc. 127). That motion relied on the Court finding that Missouri law applies and Plaintiffs' claims are prohibited in Missouri. As discussed above: (1) the Court finds Illinois law is applicable to Plaintiffs' claims because Plaintiffs' claims center around conduct and injury that occurred in Illinois; and (2) no Missouri statute or law to date has prohibited parties from bringing this specific type of action. Therefore, the Court **DENIES** Defendants' joint motion for summary judgment.

### CONCLUSION

Defendants' joint motion for application of Missouri law is **DENIED** (Doc. 126). Consequently, Defendants' joint motion for summary judgment is also **DENIED** (Doc. 127). The briefing deadline **STAY is hereby LIFTED** (*see* Docs. 136, 144). Responses to the currently pending motions (Docs. 128, 129, 130, 131) are due on or before September 1, 2023. Replies are due on or before September 8, 2023.

IT IS SO ORDERED.

DATED:  August 11, 2023

                                                   s/ Mark A. Beatty
                                                   **MARK A. BEATTY**
                                                   **United States Magistrate Judge**